Calendar No. 678

| 97TH CONGRESS<br>2d Session | SENATE | REPORT<br>No. 97-476 |
|---|---|---|

# FEDERAL FIREARMS OWNERS PROTECTION ACT

## REPORT

OF THE

## COMMITTEE ON THE JUDICIARY
## UNITED STATES SENATE

TO ACCOMPANY

### S. 1030

together with

SUPPLEMENTAL, ADDITIONAL, AND MINORITY VIEWS



JUNE 18 (legislative day, JUNE 8), 1982.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1982

95-200 O

*Exhibit 9*

COMMITTEE ON THE JUDICIARY

STROM THURMOND, South Carolina, *Chairman*

CHARLES McC. MATHIAS, Jr., Maryland
PAUL LAXALT, Nevada
ORRIN G. HATCH, Utah
ROBERT DOLE, Kansas
ALAN K. SIMPSON, Wyoming
JOHN P. EAST, North Carolina
CHARLES E. GRASSLEY, Iowa
JEREMIAH DENTON, Alabama
ARLEN SPECTER, Pennsylvania

JOSEPH R. BIDEN, Jr., Delaware
EDWARD M. KENNEDY, Massachusetts
ROBERT C. BYRD, West Virginia
HOWARD M. METZENBAUM, Ohio
DENNIS DeCONCINI, Arizona
PATRICK J. LEAHY, Vermont
MAX BAUCUS, Montana
HOWELL HEFLIN, Alabama

VINTON DeVANE LIDE, *Chief Counsel*
QUENTIN CROMMELIN, Jr., *Staff Director*
RANDALL RADER, *General Counsel to Subcommittee on the Constitution*
MARK H. GITENSTEIN, *Chief Minority Counsel*

(II)

# CONTENTS

| | | Page |
|---|---|---|
| I. | Purpose | 1 |
| II. | Committee amendment | 2 |
| III. | Purpose of committee amendment | 12 |
| IV. | Hearings and need for legislation | 14 |
| V. | Section-by-section analysis | 17 |
| VI. | Changes in existing law | 25 |
| VII. | Votes of the committee | 42 |
| VIII. | Regulatory impact statement | 42 |
| IX. | Cost of legislation | 43 |
| X. | Conclusion | 43 |
| XI. | Supplemental views of Senator Bob Dole | 44 |
| XII. | Supplemental views of Senator Max Baucus | 51 |
| XIII. | Additional views of Senator John P. East | 54 |
| XIV. | Minority views of Senator Edward M. Kennedy | 55 |

(III)

Calendar No. 678

| 97TH CONGRESS | SENATE | REPORT |
| 2d Session | | No. 97-476 |

# FEDERAL FIREARMS OWNERS PROTECTION ACT

JUNE 18 (legislative day, JUNE 8), 1982—Ordered to be printed

Mr. THURMOND, from the Committee on the Judiciary, submitted the following

# REPORT

together with

## SUPPLEMENTAL, ADDITIONAL, AND MINORITY VIEWS

[To accompany S. 1030]

The Committee on the Judiciary, to which was referred the bill (S. 1030) to protect firearms owners' constitutional rights, civil liberties, and rights to privacy, having considered the same, reports favorably thereon, with an amendment in the nature of a substitute, and recommends that the bill as amended do pass.

### I. PURPOSE

The purpose of the Committee bill is to assure that the rights of citizens to keep and bear arms under the second amendment to the United States Constitution; their rights to security against illegal and unreasonable searches and seizures under the fourth amendment; their protections against uncompensated taking of property, double jeopardy, and assurance of due process of law under the fifth amendment; and their rights against unconstitutional exercises of authority under the ninth and tenth amendments are not infringed under enforcement of existing firearm statutes. It is not the purpose of the Committee bill to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity. Further, the Committee does not want to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, which has been thwarted by

(1)

2

enforcement practices which are aimed at harassing, burdening, and harming those law-abiding citizens who choose to own and use firearms for legitimate purposes.

## II. COMMITTEE AMENDMENT

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That—

The Congress finds that the rights of citizens to keep and bear arms under the second amendment to the United States Constitution; their rights to security against illegal and unreasonable searches and seizures under the fourth amendment; their protections against uncompensated taking of property, double jeopardy, and assurance of due process of law under the fifth amendment; and their rights against unconstitutional exercise of authority under the ninth and tenth amendments; require additional legislation to correct existing firearms statutes and enforcement policies.

The Congress further finds that additional legislation is required to reaffirm its intent, as expressed in section 101 of the Gun Control Act, that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended, . . . ." or "to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes.".

### TITLE I—AMENDMENTS TO TITLE 18, UNITED STATES CODE (18 U.S.C. 921–928)

#### AMENDMENTS TO SECTION 921

SEC. 101. (a) Subsection (a) (3) is amended by striking out "(D)" and inserting in lieu thereof "(E)" and by inserting "(D) any handgun;" after "silencer;"

(b) Subsection (a) (10) is amended by deleting the words "manufacture of" and inserting in lieu thereof the words "business of manufacturing".

(c) Subsection (a) (11) (A) is amended by deleting the words "or ammunition".

(d) Subsection (a) (12) is amended by deleting the words "or ammunition".

(e) Subsection (a) (13) is amended by deleting the words "or ammunition".

(f) A new subsection (a) (14) is inserted after subsection (a) (13), to read as follows; and the following subsections are renumbered accordingly:

3

"(14) The term 'engaged in the business' means:

"(A) As applied to a manufacturer of firearms, a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured.

"(B) As applied to a manufacturer of ammunition, a person who devotes time, attention, and labor to manufacturing ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the ammunition manufactured.

"(C) As applied to a dealer in firearms, as defined in section 921(a) (11) (A) and (C), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. The term shall not include a person who makes occasional sales, exchanges, or purchases of firearms or who sells all or part of his personal collection of firearms.

"(D) As applied to a dealer in firearms, as defined in section 921(a) (11) (B), a person who devotes time, attention, and labor engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit. The term shall not include a person who makes occasional repairs of firearms or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms.

"(E) As applied to an importer of firearms, a person who devotes time, attention, and labor to importing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms imported.

"(F) As applied to an importer of ammunition, a person who devotes time, attention, and labor to importing ammunition as a regular course of trade or business with principal objective of livelihood and profit through the sale or distribution of the ammunition imported.".

(f) Subsection (a) (20) is amended to read as follows: "The term 'crime punishable by imprisonment for a term exceeding one year' shall not include (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less: *Provided, however,* That what constitutes a conviction shall be determined in accordance with the law of the jurisdiction in which the proceedings were held: *Provided further,* That any convictions which have been expunged, or set aside or for

4

which a person has been pardoned or has had his or her civil rights restored shall not be considered a conviction under the provisions of this Act, unless such pardon, expungement, or restoration of civil rights expressly provided that the person may not ship, transport, possess, or receive firearms.".

(g) A new subsection (a)(22) is inserted after subsection (a)(21) as follows: "(22) The term 'handgun' means a firearm originally designed to be used by the use of a single hand.".

### AMENDMENTS TO SECTION 922

SEC. 102. (a) Subsection (a)(1) is amended to read as follows: "for any person (A) except a licensed importer, licensed manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearms in interstate or foreign commerce; and (B) except a licensed importer or licensed manufactured to engage in the business of importing or manufacturing ammunition, or in the course of such business, to ship, transport, or receive any ammunition in interstate or foreign commerce".

(b) Subsection (a)(2) is amended—
  (1) by deleting the words "or ammunition"; and
  (2) by deleting the words "and subsection (b)(3)".
  (3) by deleting the words "or licensed dealer for the sole purpose of repaid or customizing," and inserting in lieu thereof the words, "licensed dealer, or licensed collector.".

(c) Subsection (a)(3) is amended to read as follows:
  "(3) for any person to transport into or receive in the State where he resides any firearm purchased or otherwise acquired by such person outside that State, when such person knows or has reasonable cause to believe that the purchase or acquisition of such firearm would be in violation of any published ordinance or law of the State or locality where he resides or was in violation of any published ordinance or law of the State or locality where the purchase or acquisition occurred: Provided, That any transferee (other than a licensed manufacturer, importer, or dealer) shall meet in person with the transferor to accomplish the transfer unless prior thereto such person had met with the transferor in person to negotiate the sale or the transfer is otherwise permitted by the provisions of this chapter. This paragraph shall not preclude the subsequent transportation or shipment of a firearm by a nonlicensee in interstate or foreign commerce where the provisions of this paragraph are fully met.".

(d) Subsection (a)(5) is amended to read as follows:
  "(5) for any person to transfer, sell, trade, give, transport, or deliver any firearm to any person who does not reside in the same State as the transferor when the trans-

5

feror knows or has reasonable cause to believe that the acquisition of such firearm by such person would be in violation of any published ordinance or law of the State or locality where the transferee resides or would be in violation of any published ordinance or law of the State or locality where such transfer occurs: Provided, That any licensed manufacturer, importer, or dealer shall be presumed, in the absence of evidence to the contrary, to have had actual knowledge of the published ordinances of such other State or locality, and that the transferor shall meet in person with any transferee (other than a licensed manufacturer, importer, or dealer) to accomplish the transfer unless prior thereto such person had met in person to negotiate the transfer, or the sale, transfer, or delivery is otherwise permitted by this chapter, or is in accordance with other provisions of this Act. This paragraph shall not preclude the subsequent transportation or shipment of a firearm by a nonlicensee in interstate commerce where the provisions of this paragraph are fully met, and shall not apply to the loan or rental of a firearm to any person for temporary use for lawful purposes; and".

(e) Subsection (b) is amended—
  (1) by deleting paragraph (3) and redesignating paragraphs (4) and (5) as (3) and (4) respectively and deleting in new pargaraph (3) the word "and" following ";" and after new paragraph "(4)", insert "; and";
  (2) by deleting in paragraphs (2) and newly designated (4) the words "or ammunition" wherever they appear.
  (3) by (i) deleting the words "Paragraphs (1), (2), (3), and (4)" and inserting in lieu thereof the words "Paragraphs (1), (2), and (3),"; and (ii) deleting the words "Paragraph (4)" and inserting in lieu thereof the words "Paragraph (3)".
  (4) by adding at the end thereof the following:
  "(5) deliver any handgun to any person after negotiating for the sale of such handgun to that person, before the expiration of 14 days after the date the first payment for such handgun is received from the buyer of same, except that the delay period provided for herein shall not apply in any case where (A) the chief law enforcement officer of the purchaser's place of residence certifies, by notarized statement to the seller, that the immediate delivery of the handgun to the buyer is, to his knowledge, necessary to protect against a threat of immediate danger to the physical safety of the buyer, or (B) the purchaser provides proof that he has purchased another handgun within the previous twelve months and that in such purchase he complied with such 14 day waiting period."

(f) Subsection (d) is amended—
    (1) by deleting the words "licensed importer, licensed manufacture, licensed dealer, or licensed collector" the first time they appear and inserting in lieu thereof the words "any person";
    (2) by deleting in paragraph (3) the word "or" following the semicolon;
    (3) by replacing the period in paragraph (4) with a semicolon; and
    (4) by inserting after the paragraph (4) the following:
    "(5) who, being an alien, is illegally or unlawfully in United States;
    "(6) who has been discharged from the Armed Forces under dishonorable conditions; or
    "(7) who, having been a citizen of the United States, has renounced his citizenship.".

(g) Subsection (g) is amended—
    (1) by deleting the words "is under indictment for, or who" in paragraph (1);
    (2) by deleting in paragraph (3) the word "or" following the semicolon;
    (3) by inserting after paragraph (4) the following:
    "(5) who, being an alien, is illegally or unlawfully in the United States;
    "(6) who has been discharged from the Armed Forces under dishonorable conditions; or
    "(7) who, having been a citizen of the United States, has renounced his citizenship;"; and
    (4) by deleting the words "to ship or transport any firearm or ammunition in interstate or foreign commerce" and inserting in lieu thereof the words "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.".

(h) Subsection (h) is amended—
    (1) by inserting after the word "any" and before the word "person" the words "individual who to his knowledge and while being employed by any";
    (2) by deleting the words "is under indictment for, or who" in paragraph (1);
    (3) by deleting in paragraph (3) the word "or" following the semicolon;
    (4) by inserting after paragraph (4) the following:
    "(5) who, being an alien, is illegally or unlawfully in the United States;
    "(6) who has been discharged from the Armed Forces under dishonorable conditions; or
    "(7) who having been a citizen of the United States, has renounced his citizenship;"; and
    (5) by deleting the words "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" and inserting in lieu

thereof the words "in the course of such employment to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate of foreign commerce.".

(i) A new subsection (i) is inserted after subsection (h) to read as follows; and the following subsections are renumbered accordingly:
    "(i) It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.".

### AMENDMENTS TO SECTION 923

SEC. 103. (a)(1) Subsection (a) is amended: (i) by deleting the words "No person shall engage in business as a firearms or ammunition importer, manufacturer, or dealer until he has filed an application with, and received a license to do so from the Secretary." and inserting in lieu thereof the words "No person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Secretary."; and (ii) by deleting the words "and contain such information", and inserting in lieu thereof the words "and contain only that information necessary to determine eligibility for licensing.".
    (2) Subsection (a)(3)(B) is amended by deleting the words "or ammunition for firearms other than destructive devices;".

(b) Subsection (b) is amended by deleting the words "and contain such information", and deleting the words "The fee for such license shall by regulation prescribe".

(c) Subsection (c) is amended by adding the words: "*Provided, however*, That nothing in this chapter shall be construed to prohibit a licensed manufacturer, importer, or dealer from maintaining and disposing of a personal collection of firearms, subject only to such restrictions as apply in this chapter to dispositions by a person other than a licensed manufacturer, importer, or dealer: *Provided further*, That if any firearm is so disposed of by a licensee within one year of its transfer from his business inventory into his personal collection or if such disposition is made for the purpose of willfully evading the restrictions placed upon licensees by this chapter, then such firearm shall be deemed part of his business inventory.".

(d) Subsection (e) is amended by inserting before the word "violated" the word "willfully".

(e) Subsection (f) is amended—

8

(1) by inserting the words "de novo" before the word "judicial" in paragraph (3);

(2) by adding the words "whether or not such evidence was considered at the hearing held under paragraph (2)." after the words "to the proceeding" in paragraph (3); and

(3) by inserting at the end thereof the following new paragraph:

"(4) If criminal proceedings are instituted against a licensee alleging violations of this chapter or regulations promulgated thereunder, and the licensee is acquitted of such charges, or such proceedings are terminated, other than upon motion of the Government prior to trial upon such charges, the Secretary shall be absolutely barred from denying or revoking any license granted under the provisions of this chapter where such denial or revocation is based in whole or in part on the facts which form the basis of such criminal charges. No proceedings for the revocation of a license shall be instituted by the Secretary more than one year after the filing of the indictment or information.".

(f) Subsection (g) is amended to read as follows:

"(g) (1) Each licensed importer, licensed manufacturer, and licensed dealer, shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms at his place of business for such period, and in such form, as the Secretary may by regulations prescribe. The Secretary, when he has reasonable cause to believe a violation of this law has occurred, and that evidence thereof may be found on such premises may, upon demonstrating such cause before a Federal magistrate, and securing from him a warrant authorizing entry, enter during business hours the premises (including places of storage) of any firearms importer, manufacturer, or dealer, or any importer or manufacturer of ammunition, for the purposes of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, or dealer, under the provisions of this chapter or regulations issued under this chapter, and (2) any firearms or ammunition kept or stored by such importer, manufacturer, or dealer, at such premises. Moreover, the Secretary may inspect the inventory and records of a licensee without such cause, (A) for a reasonable inquiry during the course of a criminal investigation of a person or persons other than the licensee; or (B) no more than once in any twelve consecutive months and upon a reasonable notice, but the Secretary shall bring no criminal charges against the licensee based upon such inspection or any recordkeeping errors found, other than for sales to a prohibited person; or (C) when such inspections or inquiries may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation. Such procedure shall not be construed as authorizing the Secretary to seize any records or other documents other than those records or documents constituting

9

material evidence of a violation of law. If the Secretary seizes such records or documents, copies shall be provided the licensee within a reasonable time. The Secretary may make available to any Federal, State, or local law enforcement agency any information which he may obtain by reason of the provisions of this chapter with respect to the identification of persons prohibited from purchasing or receiving firearms or ammunition who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition and he may provide information to the extent such information may be contained in the records required to be maintained by the provisions of this chapter, when so requested by any Federal, State, or local law enforcement agency.

"(2) Each licensed collector shall maintain in a bound volume the nature of which the Secretary may by regulations prescribe, records of the receipt, sale, or other disposition, of firearms. Such records shall include the name and addresses of any person to whom the collector sells or otherwise disposes of a firearm."

(g) Subsection (j) is deleted.

AMENDMENTS TO SECTION 924

SEC. 104. (a) Subsection (a) is amended by inserting after the word "Whoever" the word "willfully".

(b) Subsection (c) is amended to read as follows:

"(c) Whoever (1) uses any firearm or destructive device against the person of another, to commit a felony for which he may be prosecuted in a court of the United States, or (2) carries a firearm or destructive device unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall in addition to the punishment provided for the commission of such a felony, be sentenced to a term of imprisonment of not less than one year nor more than ten years. In the case of a second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment of not less than five years nor more than twenty-five years. Notwithstanding any other provision of law, in the case of any conviction under subsection (c)(1), the court shall not suspend the sentence of such person or give him a probationary sentence, nor shall such person be paroled or furloughed before completing such minimum sentence, nor shall any term of imprisonment imposed under this subsection (c) run noncurrently with any term of imprisonment imposed for the commission of such other felony: *Provided*, That no person shall be sentenced under this subsection if he established to the satisfaction of the court that the use of the firearm or destructive device was to protect his person or the person of another from an honestly perceived immediate danger, or was honestly perceived in defense of his person, or the person of another or the property of either from conduct constituting a felony, or

was honestly effecting the arrest of a person in immediate flight from said felony.".

(c) Subsection (d) is amended to read as follows:

"(d)(1) Any firearm or ammunition involved in or used in any willful violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1954 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845 (a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: *Provided*, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, the seized firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

"(2)(A) In any action or proceeding for return of firearms or ammunition seized under the provisions of this chapter, the court shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

"(B) In any other action or proceeding under the provisions of this chapter, the court, when it finds that such action was without foundation, or was initiated vexatiously, frivolously, or in bad faith, shall allow the prevailing party, other than the United States, a reasonable attorney's fee, and the United States shall be liable therefor.

"(C) only those firearms or quantities of ammunition particularly named and individually identified as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States, shall be subject to seizure, forfeiture, and disposition.".

### AMENDMENTS TO SECTION 925

SEC. 105. (a) Subection (c) is amended—
  (1) by deleting the words "has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act)" and inserting in lieu thereof the words "is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition";
  (2) by inserting the word "transportation" after the word "shipment";

  (3) by deleting the words "and incurred by reason of such conviction,";
  (4) adding after the words "the public interest." the words "Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. In a proceeding conducted under this subsection, the scope of judicial review shall be governed by section 706 of title 5, United States Code. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice.".

(b) Subsection (d) is amended—
  (1) by deleting the words "may authorize" and inserting in lieu thereof the words "shall authorize";
  (2) by deleting the words "the person importing or bring-in the firearm or ammunition establishes to the satisfaction if the Secretary that";
  (3) by deleting paragraph (3) the words "generally recognized as particularly"; and
  (4) by deleting the words "may permit" and inserting in lieu thereof the words "shall permit".

### AMENDMENTS TO SECTION 926

SEC. 106. Section 926 is amended by—
  (a) redesignating existing section 926 as subsection (a);
  (b) inserting the word "only" after the word "prescribe";
  (c) deleting the words "as he deems reasonable" and inserting in lieu thereof the words "as are";
  (d) deleting the words "The Secretary shall give reaable public notice, and afford interested parties opportunity for hearing, prior to prescribing such rules and regulations" and inserting in lieu thereof the words: "*Provided*, That no such rule or regulation promulgated after the effective date of this Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system or registration of firearms, firearms owners, or firearms transactions or dispositions be established".
  (e) inserting a new subsection (b) as follows:
"(b) The Secretary shall give not less than ninety days public notice, and shall afford interested parties opportunity for hearing, prior to prescribing such rules and regulations.".
  (f) by inserting a new subsection (c) a follows:
"(c) The Secretary shall not prescribe regulations that require purchasers of black powder under the exemption pro-

12

vided in section 845(a)(5) of title 18, United States Code, to complete affidavits or forms attesting to that exemption.".

AMENDMENTS TO SECTION 927

SEC. 107. Section 927 is amended by adding the words: "*Provided, however*, That any provision of any legislation enacted, or of any rule or regulation promulgated, by any State or a political subdivision which prohibits or has the effect of prohibiting the transportation of a firearm or ammunition in interstate commerce through such State, when such firearm is unloaded and not readily accessible, shall be null and void".

SEC. 108. The amendments (including any repeals) made by this Act shall become effective one hundred and eighty days after the date of the enactment of this Act.

TITLE II—AMENDMENTS TO TITLE VII OF THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT OF 1968 (18 U.S.C. APP. 1201–1203)

SEC. 201. Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (sections 1201, 1202, and 1203 of the appendix to title 18, United States Code) is hereby repealed.

III. PURPOSE OF COMMITTEE AMENDMENT

The amendments adopted by the Committee in lieu of S. 1030 as introduced were intended to reduce administrative burdens, clarify the requirements of the bill, and address concerns raised by some Senators to the bill as introduced.

S. 1030 as introduced would have defined as "importer," and thus subjected to requirements for an importer's license, anyone who brought in one or more firearms. The amended bill limits this to persons who import firearms as a regular business venture. This narrows the category of persons who must obtain the license, and permits ordinary, small scale importations by citizens returning to the United States.

The original language of S. 1030 provided that a person barred from gun ownership by a conviction would be relieved from that bar if he received a pardon or restoration of civil rights. The amended bill adds the exception that this will not apply if the pardon or restoration expressly provides that the recipient may not own firearms. This allows flexibility should such a pardon or restoration be based upon considerations not relating to fitness to own a firearm.

Existing law bans most firearm transfers between residents of different States. S. 1030 banned such transfers if they would violate the laws either of the State where they were made or the State of the buyer's residence. The amended bill makes two changes: (1) the transfer must be face-to-face; (2) a licensee is presumed to have actual knowledge of the published laws of each State. The first change rules out private "mail order" sales, the second minimizes the government's

13

initial burden of proving knowledge of State law where a sale in fact violated such law.

Existing law has been construed to bar licensees from owning private firearms collections; any transfers must be treated as business inventory. S. 1030 stated that nothing in the law would be construed to prohibit a licensee from maintaining a private collection, not part of his business inventory. It did not define the nature of the collection, nor make it clear that the exemption extended to acquisition and disposition as well as maintenance of the collection. The amended bill greatly clarifies this. It protects licensees who maintain or dispose of a private collection, provided that (1) no gun so disposed of, and which was transferred from the licenee's inventory, may be disposed within one year of the initial transfer unless fully recorded, and (2) no transfer may be made in order to evade the restrictions otherwise placed upon a licensee.

S. 1030 provided that a firearms license may not be revoked based on allegations of which the licensee has been acquitted in a criminal trial, or which have ended in any result other than his conviction. The amended bill allows the government to voluntarily drop criminal charges prior to trial and still proceed with revocation.

Similarly, S. 1030 barred forfeiture of seized firearms if the owner had been acquitted of charges, or if any finding other than guilty was entered, or if the enforcing agency failed to file such charges within 120 days. The amended bill allows the agency to bring a forfeiture action if it did not file charges at all or dropped them voluntarily before taking the defendant to trial. The forfeiture action must in any event be filed within 120 days.

Existing law broadly empowers agents to search licensee premises during business hours without warrant or cause. S. 1030 provided that probable cause relating to a violation of a gun law must exist. The amended bill makes several changes: (1) "reasonable" rather than "probable" cause is required, lowering the standard but only slightly; (2) an administrative warrant is required, giving procedural safeguards and creating a record of use; (3) certain limited exceptions are recognized where such cause is not needed—mainly for firearm tracing and for an annual courtesy inspection and instruction. These expressly allow tracing and instruction without permitting harassment.

Existing law provides an additional sentence (must be served consecutively) but not a mandatory sentence (no probation or parole) for use of a gun, or carrying of it, during a federal felony. The additional sentence becomes mandatory only upon second conviction under this section—which has never occurred. S. 1030 originally provided a mandatory but not additional sentence for use of a firearm in a federal felony. Exceptions were provided for self defense. This was criticized since (1) the sentence was not additional and (2) carrying during the felony, absent actual use, was not an occasion for special penalties. Amended S. 1030 meets both these criticisms. The sentence for use in a felony is made both additional and mandatory—it cannot be served concurrently with any term for the underlying felony, and probation and parole are banned. The imposition of an additional sentence for carrying during a felony is retained—thus keeping current additional sanctions against carrying during the felony. The Committee also

expanded the minimum sentence from one year to two for a first offense.

Existing law allows one convicted of a felony to apply for a relief from disability which, if granted based on his record and reputation, restores the right to own firearms. The existing relief provisions had several anomalies: they applied only to convicts, excluding those barred from gun ownership for other reasons (prior mental disorder, etc.); they could not be invoked by one convicted of even the most technical violation of the gun law itself; the provisions were vague, with burden on the applicant to satisfy them; and there was no provision for judicial review. S. 1030 would have applied relief provisions to everyone barred from gun ownership, would have made provisions for *de novo* review of denials, and would have put the burden on the issuing authority to establish such that it should not be granted. The amended bill retains the broadening of applicability, but permits the burden to revert to the applicant as under current law. Review is retained, but under standards of the Administrative Procedure Act. This retains the most vital reforms while eliminating those which encountered the most controversy.

S. 1030 contained provisions for a one-house veto of administrative regulations. The amended bill eliminates these.

The Committee amendments also impose a fourteen-day waiting period before a handgun which is purchased from a dealer, may be delivered. This is intended both as a "cooling off" period and to allow background checks by local police.

### IV. HEARINGS AND NEED FOR LEGISLATION

The mandate for the addition of civil liberty guarantees to the Gun Control Act of 1968 was documented initially in oversight hearings on the Bureau of Alcohol, Tobacco and Firearms, held by the Senate Committee on Appropriations in July 1979, and in April, 1980. During those hearings, the Committee received testimony from a number of firearm owners and collectors who had been prosecuted for technical and unintentional violations of federal law. Several had, in addition, experienced confiscation of entire collections or inventories based upon allegations of isolated non-willful violations, and subsequently had been required to litigate in the courts in order to secure the return of firearms, or to oppose revocation of licenses, despite acquittal on all charges during previous criminal trials.

The Committee further heard testimony from a former Treasury official who estimated that 75 percent of firearms cases had been brought against individuals whose violations, if any, were unintentional. Written statements were also received from two members of the state judiciary, who commented that agents enforcing the firearms laws had repeatedly refused to bring cases against convicted felons in illegal possession of sawed-off shotguns and other prohibited weapons. The need for a redirection of enforcement efforts away from legitimate firearm owners and toward serious, intentional criminals was apparent.

Senator Dennis DeConcini, who chaired the hearings in the Appropriations Committee concluded:

Frankly, I was shocked by yesterday's testimony. The problem appears much greater in scope and more acute in intensity than I had imagined. It is a sobering experience to listen to average, law-abiding citizens present evidence of conduct by an official law enforcement agency of the federal government which borders on the criminal. . . . The testimony offered yesterday, together with supporting documentary data, is extremely disquieting. . . . (It) indicates that BATF has moved against honest citizens and criminals with equal vigor. . . . The time has come to make some revisions in the Gun Control Act of 1968.

The Subcommittee on the Constitution of the Senate Committee on the Judiciary held additional hearings on Gun Control and Constitutional Rights in September, 1980. The Subcommittee heard from both the Treasury Department and the National Rifle Association, and also from three firearm collectors who had experienced confiscations of their entire collections for alleged violations. In two cases, charges were dropped, and in the remaining one, no charges were ever brought. The firearms taken in the last case—described as valuable collector items, engraved and inlaid with precious metals—were still being withheld, nearly three years after their taking. Additional documentary evidence was obtained from thirty-one of the dealers and collectors. The Subcommittee's subsequent report, "The Right to Keep and Bear Arms," concluded:

Based upon these hearings, it is apparent that the enforcement tactics made possible by current firearms laws are constitutionally, legally, and practically reprehensible. Although Congress adopted the Gun Control Act with the primary object of limiting access of felons and other high-risk groups to firearms, the overbreadth of the law has led to neglect of precisely this area of enforcement. . . . The Bureau's own figures demonstrate that in recent years the percentage of its arrests devoted to felons in possession and persons knowingly selling to them have dropped from 14 percent down to 10 percent of their firearms cases (and that) 55 percent of its gun law prosecutions overall involve persons with no record of a felony conviction, and that a third involve citizens with no police record whatsoever. . . .

The Subcommittee received evidence that BATF has primarily devoted its firearms enforcement efforts to the apprehension, upon technical *malum prohibitum* charges, of individuals who lack all criminal intent and knowledge. . . . Since existing law permits a felony conviction upon these charges even where the individual has no criminal intent or knowledge, numerous collectors have been ruined by a felony record carrying a potential sentence of five years in a federal prison. Even in cases where the collectors secured acquittal, or grand juries failed to indict, or prosecutors refused to file criminal charges, agents of the Bureau have gen-