```
 1                    U.S. DEPARTMENT OF JUSTICE
         BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
 2                FARGO FIELD OFFICE, NORTH DAKOTA

 3   --------------------------------------------------------
     UNITED STATES OF AMERICA            )
 4   IN THE MATTER OF THE NOTICE         )
     TO REVOKE OR SUSPEND LICENSE        )
 5   AND/OR IMPOSE A CIVIL FINE          )
     ISSUED TO:                          )
 6                                       )
     MOREHOUSE ENTERPRISES, LLC          )
 7   1021 14TH STREET SW                 )
     VALLEY CITY, ND 58702               )
 8   --------------------------------------------------------
```

 9

10                              HEARING

11         REPORT OF PROCEEDINGS on the hearing of the

12  Notice to Revoke or Suspend License and/or impose a

13  Civil Fine, ATF Form 4500, issued under the provisions

14  of Title 27, Code of Federal Regulations, Part 478(e),

15  by DIRECTOR DIO HANS HUMMEL on the 16th of August, 2023,

16  at 657 2nd Avenue North, Fargo, North Dakota.

17

18

19

20

21

22

23

24        REPORTED BY:   Matthew Hanneman, Notary Public

25

Page 74

1  here today because it's up to the DIO to determine whether
2  it's willful.
3         So as the IOI testified, he just writes the
4  report, you know his, I guess, opinion as to willfulness,
5  that's not relevant because the DIO determines willfulness
6  based on the information that's presented here at this
7  hearing today.
8         MR. HARRIS:  I understand.
9  BY MR. HARRIS:
10    Q.  IOI Temp, could you look at Licensee's Exhibit 2
11 for me?  It's the next big book probably.  That's it.
12    A.  Messed up the whole order on that, but all right,
13 I'm on Exhibit 2.  What?
14    Q.  Are you familiar with that document?
15    A.  Yes, I am, sir.
16    Q.  Is it currently in effect?
17    A.  Yes.  It's an industry operations manual.  I mean, I
18 don't know if I -- quite frankly, I don't know if it's the
19 latest edition or what, but I'm familiar with this document.
20    Q.  Okay.
21         MS. THIELHORN:  Mr. Harris, again, we're here to
22 determine whether your client's committed these violations
23 willfully.  So getting into an ATF manual, a training
24 manual, a  go by , again, I don't understand the relevance
25 of whether your clients, you know, acted with deliberate

Page 75

1  indifference or purposely disregarded the law.  That's the
2  only thing that we're here to talk about today.
3         So regardless of what, I know you proposed this or
4  submitted as part of the record.  But again, this is an
5  internal manual that the IOIs use for training and you know,
6  as guidance.  And again, he wrote the report, set forth
7  violations.
8         It's my understanding they're not contesting that
9  the violations occurred, they're just wanting to talk about
10 whether or not they were willful.  So again, how is this
11 relevant to the DIO's determination?
12        MR. HARRIS:  Well, and I'll be glad to answer.
13 The IOM, Inter Operations Manual, contains policies and
14 procedures that that talk about how the compliance
15 inspection is being conducted.  And part of that goes to the
16 documentation of evidence relative to the issue of
17 willfulness.  That's specifically the question I'm asking.
18        All I'm trying to clarify for the record and for
19 the court is that IOI Temp's job, as he saw it in this
20 particular instance, was to go out and make a report based
21 upon what he found to be violations, but he made no report
22 or recommendation as to the issue of willfulness.
23        MS. THIELHORN:  Well, again, the evidence that we
24 are submitting in support of the numbers of violations are
25 presented in Government's Exhibits 1 through 11.  That's the

Page 76

1  evidence we're relying on.  And that's the evidence that the
2  Court will review in determining whether, you know, the
3  violations were committed willfully and, you know, whether
4  or not the DIO, you know, could act the way that he chooses
5  to act regarding the outcome of his hearing.
6         So DIO Hummel, is this helpful to you?
7         DIO HUMMEL:  Well, no.  And that's the --
8  ultimately, what we're talking about and what this is all
9  about is, is a legal standard of willfulness that we've been
10 talking about all along.
11        MR. HARRIS:  Right.
12        DIO HUMMEL:  The process by which he found
13 these violations and has presented them.  And this is the
14 opportunity to talk about how those violations occurred and
15 what may have been known or not known, which was clearly the
16 point of certainly, the questions that are being asked.  But
17 as the our, you know, internal case management system and
18 our internal processes and procedures for purposes of
19 conducting inspections, I don't get how that affects what
20 was issued in this notice and whether or not they meet the
21 legal standard of willfulness.
22        MR. HARRIS:  Right.
23        DIO HUMMEL:  The legal standard, not anything
24 other than that.
25        MR. HARRIS:  Well, it's a factual component to it,

Page 77

1  and I don't want to get into a debate about it.  I've got
2  about four questions that I'd just like to get on the record
3  that I think go to the issue of willfulness.  And I think
4  courts have found, in other cases I've had, go to the issue
5  of wolflessness.  And if I'll be permitted, I don't want to
6  spend a lot of time asking questions about ATF standards and
7  procedures.
8         But I do have about four specific questions that
9  whenever I do an IOI cross-examination, that I typically
10 asked and that I have found courts are interested in.
11        DIO HUMMEL:  But again, for purposes of this
12 hearing, this may not go to a court, right?  Because that's
13 what this is for.  This is my opportunity to gather the
14 information.
15        MR. HARRIS:  Right.
16        DIO HUMMEL:  So I can make a final decision
17 then, then, and as my prologue will walk through, then
18 there's an opportunity to appeal a decision in de novo
19 review, and that's when the courts are involved to your
20 point.  But for purposes of the presentation, in this
21 presentation, I'd really like to just stick to "not go down
22 the path" of again, a case management system because it
23 isn't relevant to the violations and whether or not they are
24 done willfully or not.  And, again this is the opportunity
25 to voice that.  This is the opportunity for the FFL to

Page 82

1  observed?
2    A.  Yes.  I go as I testified to or I stated, I review
3  A&D records, 4473s, reconcile inventory to the A&D, review
4  the audit log, and I disclose the violations that I found
5  and cited them in the ROV and then dislose them to the
6  licensee.
7    Q.  Okay.
8    A.  That was my duty.
9    Q.  And do you understand your duty to include whether
10 it's reported to the licensee or not, for example, on the
11 reported violations, does your scope of duties, as an IOI,
12 in a compliance inspection include making any findings,
13 conclusions, or recommendations concerning whether the
14 violations were inadvertent, accidental, or willful?
15   A.  It doesn't.  My disclosure of violations have --
16 there's nothing I read, like E-check or whatever.  I mean,
17 it really has nothing to do with my opinion on whether
18 they're willful or whether they're inadvertent or anything
19 like that.  I disclose the violations that I found and I
20 cite the licensee, like in this case what I did, I don't
21 have like there -- I don't have an opinion box on there that
22 record my opinions like I, you know.  Like I said, my duty
23 is to disclose the violations that I cited.
24   A.  Okay.
25       THE COURT REPORTER:  That I see?

Page 83

1        THE WITNESS:  That I cited.
2        THE COURT REPORTER:  That I cited.  Thank you.
3  //
4  BY MR. HARRIS:
5    Q.  And as to that next element that brings us here
6  today, do you have, as an IOI, any involvement in reaching
7  the conclusion, at any point, as to whether or not any
8  violation that you've identified was either willful or
9  knowing or inadvertent or accidental or just human error?
10       Does your job, as an IOI, include any of that
11 analysis at anytime, not just on the ROV?
12       MS. THIELHORN:  Again, Mr. Harris, I don't
13 understand how internal processes at ATF have anything to do
14 with whether your clients committed the three violations
15 cited in the notice to revoke, whether they committed those
16 willfully.  He's explained to you, as an IOI, his duty is to
17 go out to do the compliance inspection, to review the A&D,
18 to do the inventory, to reconcile things, to review the
19 4473s , and then to write up a report of the, you know,
20 violations that he finds.
21       He presents that to your clients and he goes over
22 that with your clients and they have a discussion about it.
23 He tries to educate them on it and that's his job and that's
24 the exhibits that we presented here in support of this.
25       So your questions are all outside the scope of the

Page 84

1  determination that we have here today for the violations
2  willfully.  What he may or may not do after he closes out
3  this inspection with your clients, after he presented it to
4  them and talks to them; that's all internal ATF processes.
5  And again, you filed this lawsuit in federal court
6  challenging some of these internal ATF processes.
7        So I don't think it's appropriate for you to
8  specifically ask him questions that's beyond the scope of
9  this hearing today, but more in line with the lawsuit you
10 filed when his attorney for that lawsuit is not here.  I
11 mean, when the time comes, that litigation, I'm sure, you
12 know, court's about discovery and that will be your time,
13 you know, to talk about this when he has his attorney and
14 you all get into this.
15       But again, as the DIO has already said a couple of
16 times, internal ATF processes that happen or may or may not
17 happen after this report is generated and signed by your
18 client and discussed with your client, it has nothing to do
19 with the conversation here today of how did these violations
20 occur?
21       That you know, let's hear what happened.  This is
22 their chance to explain to the DIO, hey, it happened and
23 here's how it happened.  We made a mistake or this happened.
24 We were confused or you know, various explanations.  But all
25 of this stuff about what he does after the fact, the IOI,

Page 85

1  his process is after the fact.  It's irrelevant to this
2  determination.
3        MR. HARRIS:  My point is, and what I'm trying to
4  document for the record on which an ultimate decision here
5  is going to be made, regardless of the now two Federal
6  lawsuits that are out there, is from the government's
7  witness, I want to elicit testimony on specifically what
8  factors were considered or evaluated, not on the question of
9  was there technically an error which is not really being
10 disputed.
11       You've cited things.  There's two exhibits.
12 There's errors, okay?  This hearing is about willfulness.
13 Some government witness, somewhere, needs to testify as to
14 the factors that constituted willfulness, as distinguished
15 from accident, inadvertence, human error.  Some government
16 witness has to testify as to whether or not the errors that
17 we're talking about were plain indifference or reckless
18 disregard.
19       I'm trying to establish that this witness did not
20 make any of those determinations.  It's all I'm trying to
21 do.  Now, if the government wants to concede that this
22 witness wasn't involved in any of that, without any more
23 questions on those topics, I'm willing to entertain that
24 stipulation.
25       MS. THIELHORN:  Well, again, Mr. Harris,