IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Morehouse Enterprises, LLC, d/b/a/ Bridge City Ordnance, et al., <br><br> Plaintiff, <br><br> vs. <br><br> Bureau of Alcohol, Tobacco, Firearms and Explosives, et al., <br><br> Defendants. | **ORDER GRANTING MOTION TO DISMISS** <br><br> Case No. 3:23-cv-129 |

The Gun Control Act of 1968 requires firearm dealers to obtain and maintain a license from the Attorney General. See 18 U.S.C. § 923(a). The Attorney General may, after notice and opportunity for a hearing, revoke a license if its holder "willfully violated" the Gun Control Act. Id. § 923(e). In 2021, the Biden Administration announced a policy of "zero tolerance" for "rogue gun dealers," and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") circulated an internal document that instructs agency personnel to seek revocation for certain first-time violations of the Gun Control Act. Plaintiffs Morehouse Enterprises, LLC, d/b/a/ Bridge City Ordnance ("Morehouse"), a federal firearms license holder in North Dakota, and Gun Owners of America ("GOA") and Gun Owners Foundation ("GOF"), organizations founded to preserve Second Amendment rights, filed a complaint against Defendants ATF, Department of Justice, ATF Director Steven Dettelbach, and St. Paul ATF Field Director Hans Hummel (altogether, the "ATF"). Doc. 1. After Plaintiffs' motion for a preliminary injunction was denied, the ATF moved to dismiss the complaint for failure to state a claim. And for the reasons below, its motion is granted.

I.      **BACKGROUND**

"[T]he focus of the federal scheme" of firearms regulation "is the federally licensed firearms dealer." Huddleston v. United States, 415 U.S. 814, 825 (1974). The Gun Control Act ("GCA") requires no person engage "in the business of . . . dealing in firearms" without first obtaining "a license to do so from the Attorney General." 18 U.S.C. § 923(a). These licenses—referred to as federal firearms licenses—are prerequisites to running a firearms business. A federal firearms license is obtained through an application to the Attorney General. If the application is granted, a federal firearms licensee, or FFL, may deal, manufacture, or import firearms subject to a host of laws and regulations. An FFL may not, for example, sell a firearm to someone under eighteen or to someone under indictment. See e.g., 18 U.S.C. §§ 922(d)(1)-(11). FFLs must keep detailed records to document their compliance with these rules. See id. § 923(g)(1)(A).

The Attorney General, through the ATF, may inspect the inventory and records of an FFL without suspicion to ensure compliance with the GCA "not more than once during any 12-month period." Id. § 923(g)(1)(B)(ii)(I). If the ATF finds an FFL has "willfully violated" the GCA or its implementing regulations, it may revoke a dealer's license after notice and opportunity for a hearing. See id. § 923(e). A revocation proceeds in this way—first, the ATF sends the FFL a notice "stating specifically the grounds upon which . . . the license was revoked." Id. § 923(f)(1). Next, the FFL may request a hearing before the ATF to review its alleged willful violation of the GCA and the revocation of its federal firearms license. See id. § 923(f)(2). After the hearing, if the ATF decides not to reverse its initial decision, it will again issue a notice of revocation. See id. § 923(f)(3). Within sixty days after the hearing, the FFL may petition a United States District Court for de novo review of the ATF's decision. Id. The District Court then decides whether the FFL

willfully violated the GCA and consequently whether the ATF was "authorized" to revoke the license. Id.

### A. The ATF's Inspection of Morehouse

Morehouse is an FFL, and the ATF inspected its records in February 2023. This was, as alleged, Morehouse's first inspection and less than a year after its prior lawsuit against the ATF. See e.g., Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022). Plaintiffs believe the ATF's inspection was retaliation. The connection was not lost on the ATF according to the complaint; the ATF official on scene allegedly "jok[ed] . . . that ATF personnel had discussed whether the inspection of [Morehouse] would appear to be in retaliation for [Morehouse] having sued ATF." Doc. 1 ¶ 152.

The ATF found alleged errors in Morehouse's records, and, on May 23, 2023, Morehouse received a "Notice to Revoke or Suspend License." See Doc. 1-1. The ATF's notice cited three willful violations of the GCA: one, Morehouse willfully sold a rifle or shotgun to a person it knew or had reason to know did not reside in North Dakota. See 18 U.S.C. § 922(b)(3). Two, Morehouse willfully failed to conduct a required background check. See id. § 922(t). And three, Morehouse willfully failed to meet its recordkeeping requirements. See id. The ATF held a hearing on the revocation of Morehouse's license on August 16, 2023. See Doc. 23. About two weeks later, the ATF reversed its initial decision and "determined not to issue a Final Notice of Revocation." Id.

### B. The Administrative Action Policy

Plaintiffs allege Morehouse's notice of revocation was the result of a new policy. See Doc. 1 ¶ 184. In 2021, the Biden Administration announced "a new policy" of "zero tolerance for rogue gun dealers that willfully violate the law." See White House, Fact Sheet: Biden-Harris

3

Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety, https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (last visited Sept. 12, 2024). To enforce its zero tolerance policy, the Biden Administration explained the ATF would seek revocation of federal firearms licenses for certain first-time violations of the GCA. Id.

After the public announcement, the ATF circulated an internal Administration Action Policy (the "AAP").[1] The AAP is a thirteen page document sent to all ATF industry operations offices. The AAP's stated purpose is to provide "fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearms licenses." Doc. 55-1, p. 2. There are two portions of the AAP relevant to this case—a section on the ATF's enforcement policy and a section on § 923(e)'s willfulness requirement.

Section 7 of the AAP pairs an FFL's violation of the GCA with an appropriate administrative action. Id. at 5-6. To start, Sections 7(c) and 7(d) identify violations of the GCA that merit only a warning letter or a warning conference. The AAP notes these administrative actions do "not require a determination of willfulness." Id. For example, an FFL is required to report the theft of a firearm to the ATF and local law enforcement within 48 hours. See 18 U.S.C. § 923(g)(6). Under the AAP, an FFL's failure to timely report the theft to either the ATF or local law enforcement merits a warning letter, but an FFL's failure to report the theft at all merits a warning conference. Doc. 55-1, p. 6. Warning letters and conferences are less severe than

---

[1] The AAP is not public, but the ATF attached a copy of a recent version—ATF-O-5371.1F— to its motion to dismiss. Doc. 55-1. The Court's use of "the AAP" refers to the document titled ATF-O-5371.1F.

4

revocation, but an FFL's violation of the GCA after a warning letter or conference can result in a determination that a later GCA violation was willful. Id. at 9.

The ATF will, however, seek revocation for some first-time violations of the GCA, and this is one of Plaintiffs' main concerns. Section 7(e)(2) of the AAP explains the ATF "will" revoke a federal firearms license, absent extraordinary circumstances, for five first-time violations of the GCA. The AAP reiterates the ATF must establish willfulness, and its policy "does not replace or countermand" that requirement. Id. at 7. The AAP also lists additional offenses—such as willfully transferring a firearm to an underage person—where revocation is appropriate but not mandated. Id. at 9.

Plaintiffs are also concerned about the AAP's discussion of § 923(e)'s willfulness requirement. Recall the Attorney General may revoke a federal firearms license only for "willful violations" of the GCA. "Willful" is not defined by statute, but courts have settled on a meaning: a FFL willfully violates the GCA when it "knew of its legal obligation and 'purposefully disregarded or was plainly indifferent to the record-keeping requirements.'" On Target Sporting Goods, Inc. v. Att'y Gen. of U.S., 472 F.3d 572, 575 (8th Cir. 2007) (quoting Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979)).

Important to the AAP's zero tolerance enforcement policy is its position that the "ATF does not have to establish a history of prior violations to demonstrate willfulness." Doc. 55-1, p. 7. Rather, the AAP states some GCA violations can "inherently demonstrate willfulness." Id. Section 7(e)(4) of the AAP also describes several ways the "ATF can establish the knowledge element of willfulness." Id. First, the ATF can "[e]stablish the FFL has a history of similar, repeat violations, and documentation that an [Industry Operations Investigator] discussed them with the FFL." Id. Second, the ATF can "[u]se inspection reports to establish willfulness even if the

5

inspection found no violations." Id. at 8. Third, the ATF can point to an FFL's statements, admissions, or actions "during an inspection that demonstrate knowledge of regulations." Id. Fourth, the ATF can show "[p]ublications and information provided to the FFL which explain the FFL's legal responsibilities." Id. Fifth, the ATF can "[d]emonstrate that the FFL has complied with the specific regulation on other occasions." Id. And sixth, the ATF can also "[d]emonstrate that the FFL has substantial experience as an FFL." Id.

### C. The Motion for Preliminary Relief and the Motion to Dismiss

Plaintiffs argue the AAP's zero tolerance enforcement policy along with its interpretation of § 923(e)'s willfulness requirement results in the ATF revoking licenses for "honest mistakes, misunderstandings, and human error." Doc. 1 ¶ 264. Before the ATF reversed Morehouse's revocation notice, Plaintiffs filed a complaint with five claims: (1) the AAP is arbitrary and capricious under the Administrative Procedure Act, (2) the AAP violates the Second Amendment, (3) the ATF's inspection was retaliation in violation of the Fifth Amendment, (4) the ATF's inspection was selective prosecution in violation of the Fifth Amendment, and (5) the ATF's inspection denied it access to the courts in violation of the First Amendment. Plaintiffs request declaratory and permanent injunctive relief.[2]

Shortly after filing their complaint, Plaintiffs moved to preliminarily enjoin the ATF from "further implementing or enforcing" the "zero tolerance policy . . . in the [AAP]." Doc. 15, p. 1. On January 2, 2024, this Court denied Plaintiffs' motion for a preliminary injunction because there was no threat of irreparable harm after the ATF reversed its initial revocation of Morehouse's license, and Plaintiffs faced "a thicket of justiciability issues on their way to a successful claim."

---

[2] Plaintiffs have explained their case "is *not* brought pursuant to Section 923(f)," which allows for de novo judicial review of a revocation. See Doc. 15-1, p. 9.

Doc. 49, p. 21. Two months later, the ATF moved under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## II. LAW AND DISCUSSION

Federal Rule of Civil Procedure 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to plausibly state a claim. In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint, but legal conclusion are "not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009). Under Rule 12(b)(1), the complaint must be dismissed if the Court "lack[s] subject matter jurisdiction." The ATF argues Plaintiffs' complaint should be dismissed for four reasons: (1) Morehouse and GOF lack standing, (2) the AAP is committed to agency discretion and not a final agency action, (3) the AAP does not burden conduct protected by the Second Amendment, and (4) Plaintiffs do not plausibly allege claims under the First and Fifth Amendments. See Doc. 68.

### A. Standing

The Court begins with standing. Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. This jurisdictional limitation requires every plaintiff to demonstrate it has "standing" when bringing an action in federal court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Standing requires (1) an injury in fact, (2) causation, and (3) redressability. See Hughes v. City of Cedar Rapids, 840 F.3d 987, 992 (8th Cir. 2016). An injury in fact is "the actual or imminent invasion of a concrete and particularized legal interest." Kuehl v. Sellner, 887 F.3d 845, 850 (8th Cir. 2018) (citations omitted). Causation is satisfied when the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Balogh v. Lombardi, 816 F.3d 536, 543 (8th Cir. 2016) (cleaned up). Redressability means "the injury will be redressed by a favorable decision." Kuehl, 887 F.3d at 850 (citations omitted).

In its preliminary injunction order, the Court doubted whether GOA and GOF could establish associational standing. See Doc. 49, p. 12. Associational standing allows an organization to "bring suit on behalf of its members," but only if it can show "that at least one identified member had suffered or would suffer harm." Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009); see also Religious Sisters of Mercy v. Becerra, 55 F.4th 583, 601 (8th Cir. 2022). Plaintiffs did not initially make this showing, see Doc. 49, p. 13, but after the preliminary injunction order, they submitted a declaration that identified two members of GOA that had federal firearm licenses revoked while the AAP was active. So, the ATF no longer challenges GOA's standing. And having reviewed the declaration, the Court finds GOA has established associational standing.[3]

Morehouse has standing because it was "the object of the government action" challenged when it received a notice of revocation. See Lujan, 504 U.S. at 562. While that was enough to establish standing, Morehouse's request to enjoin the revocation proceedings are moot because

---

[3] Typically, "if many plaintiffs seek the same relief and at least one of them has Article III standing, the court need not determine whether others also do." M.M.V. v. Garland, 1 F.4th 1100, 1110 (D.C. Cir. 2021). GOF seeks the same relief as GOA, so GOF's standing need not be addressed. But this rule does not apply to Morehouse because it seeks "individualized relief." Id.

there is no proceeding to enjoin. See Doc. 49, p. 14. But its claims are not moot in their entirety. Morehouse's other request for relief—including a request of declaratory relief—provide it with "a legally cognizable interest in the outcome" of the case. See Teague v. Cooper, 720 F.3d 973, 976 (8th Cir. 2013); see also Felts v. Green, 91 F.4th 938, 941 (8th Cir. 2024) (finding voluntary cessation did not moot declaratory relief). Plaintiffs have standing so the Court considers their claims, starting with their claim under the Administrative Procedure Act.

### B.   Administrative Procedure Act

The ATF argues Plaintiffs cannot bring a claim under the Administrative Procedure Act (the "APA") because the AAP is not a final agency action. Section 704 of the APA provides judicial review only over a "final agency action." See 5 U.S.C. § 704. "[T]he APA requires that the challenged administrative decision be final." Est. of Sauser v. United States, 171 F. Supp. 3d 947, 954 (D.S.D. 2016). If the agency action is not final, the claim against must be dismissed.

The Supreme Court has set out a two-part test to determine if an agency action is "final" for § 704 purposes: first, "the action must mark the consummation of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature." Bennett v. Spear, 520 U.S. 154 (1997). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. (internal quotation marks omitted). The parties primarily dispute the second part: whether the AAP is an agency action that determines "rights or obligations" or one from which "legal consequences will flow."

Measuring an agency action's legal effect is, as the Supreme Court reaffirmed in U.S. Army Corps of Engineers v. Hawkes Co., a "pragmatic" exercise. 578 U.S. 590 (2016). In Hawkes, the Supreme Court held an Army Corps of Engineers' "jurisdictional determination" that a private property contained waters covered by the Clean Water Act had "direct and appreciable legal

consequences." Hawkes, 578 U.S. at 598. A negative jurisdictional determination—meaning the property contains no covered waters—bound the Corps for five years and represented its position in future litigation, creating "a five-year safe harbor" for a property owner. Id. The negative jurisdictional determination, in other words, "limit[ed] the potential liability a landowner faces for discharging pollutants without a permit." Id. at 599. An affirmative jurisdictional determination had the converse legal consequence; it "represent[ed] the denial of the safe harbor that negative [jurisdictional determinations] afford." Id.

To be a final agency action following Hawkes, the AAP "must determine parties' rights or obligations or compel legal consequences." Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. United States Corps of Engineers, 888 F.3d 906, 915 (8th Cir. 2018). The AAP must "compel affirmative action or prohibit otherwise lawful action" and must "inflict some legal injury upon the party seeking judicial review." Id. But "an agency does not inflict injury merely by expressing its view of the law." Id.

In its preliminary injunction order, the Court found that "it does not appear the AAP is a final agency action." Doc. 49, p. 19. This was in part because the AAP "explains how the agency will enforce" § 923(e) similar to an unreviewable general statement of policy. See Nat'l Min. Ass'n v. McCarthy, 758 F.3d 243, 251-52 (D.C. Cir. 2014). A statement about how an agency "will exercise its broad enforcement discretion" does not alter existing legal obligations. Id. The Attorney General is "authorized" to revoke an FFL's license for a willful violation of the GCA, and an internal decision on when to exercise that authority changes neither the obligations of FFLs nor the power of the Attorney General. See 18 U.S.C. § 923(f)(3) (stating a district court shall review only whether the ATF was "authorized" to revoke an FFL's license); see also Fairmont Cash Mgmt., L.L.C. v. James, 858 F.3d 356, 363 (5th Cir. 2017) ("Our question is not whether the

ATF fairly distributes its revocation decisions among FFL-holders who violate the Gun Control Act; it is whether the ATF was authorized by the Act to revoke.").

What is more, the AAP does not bind the ATF to a legal position that expands or contracts a regulated party's liability. Disputing this interpretation, Plaintiffs argue the AAP's policy that certain willful violations "shall" result in revocation amends § 923(e)'s provision that the Attorney General "may" revoke a license. See 18 U.S.C. § 923(e). But this is inaccurate. Section 923(e) states the ATF "may" revoke a dealer's license for a willful violation of the GCA after notice and opportunity for a hearing. Id. But the AAP does not state the ATF "shall" revoke a license for all willful violations; only those that, in the ATF's view, "affect public safety and ATF's ability to trace firearms recovered in violent crimes." Doc. 55-1, p. 4. This prioritization is an implementation—not a violation—of the Attorney General's grant of discretion under § 923(e).

Another way to assess an agency action's legal consequences is whether it can be used in a legal proceeding, and the AAP is not useful. In Hawkes, for example, the Army Corps of Engineers' determination that private property contained no waters covered by the Clean Water Act bound the United States in litigation for five years. 578 U.S. at 600. In contrast, neither the ATF nor an FFL "can rely on" the AAP in any proceeding. See California Communities Against Toxics v. Env't Prot. Agency, 934 F.3d 627, 638 (D.C. Cir. 2019) (agency action not final in part because agency could not use it in a legal proceeding). Plaintiffs argue the AAP has legal consequences because it cannot commit "even *one* of the 'zero-tolerance' violations." Doc. 62, p. 25. But Morehouse was obligated to not willfully commit any of the "zero-tolerance" violations before and after the AAP; the ATF could revoke a dealer's license for those violations, even first-time violations, before and after the AAP; and a court would apply the long-standing definition of "willful" on review before and after the AAP. So, the AAP does not alter legal rights or

11

responsibilities. Nor does the ATF does not characterize it as doing so. See Nat'l Min. Ass'n, 758 F.3d at 252 (another factor of finality is "the agency's characterization" of the agency action). The AAP was not promulgated to regulated parties and expressly disclaims conferring "any right or benefit" or being "enforceable at law." Doc. 55-1, p. 1. The AAP is not a final agency action, and Plaintiffs' claim under the APA is dismissed for that reason.[4]

### C. Second Amendment

Plaintiffs' next claim is that the AAP violates the Second Amendment. Plaintiffs argue the AAP burdens the right to manufacture, purchase, and sell firearms and ammunition. Doc. 1 ¶ 276. Plaintiffs do not, however, challenge § 923(e). So, it is unclear "what behavior it wishes to engage in, as an LLC, that is protected by the Second Amendment" and how the AAP—instead of § 923— burdens that behavior. See Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 78 F.4th 1011, 1018 (8th Cir. 2023). To the extent Plaintiffs claim the AAP violates the Second Amendment because it eliminates the willfulness requirement, the claim fails because the AAP does not eliminate it. See Doc. 49, p. 20 (finding the AAP's interpretation of willfulness supported by prior judicial interpretation). Moreover, the Supreme Court has recognized that "laws imposing conditions and qualifications on the commercial sale of arms" like § 923(e) are presumptively lawful. See D.C. v. Heller, 554 U.S. 570, 627 (2008); McDonald v. City of Chicago, Ill., 561 U.S. 742, 786 (2010); N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 80 (2022) (Kavanaugh, J., concurring).

Plaintiffs also assert the individual rights of their customers to bear arms. But their claims that individual gun owners' constitutional right to purchase firearms will be infringed as FFLs go

---

[4] Because the AAP is not a final agency action, the ATF's argument that the AAP is also committed to agency discretion under § 701(a) not need be considered. See Doc. 55, p. 24.

out of business is too speculative to state a claim. See Ashcroft, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### D. Remaining Constitutional Claims

Plaintiffs remaining claims are related to the ATF's inspection of Morehouse's records. Plaintiffs allege the ATF's inspection was a "vindictive prosecution" in violation of the Fifth Amendment. "A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process." United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004). "It is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right." Id. Claims of vindictive prosecutions typically arise in the criminal context, not the civil. In any event, Plaintiffs do not plead enough facts to plausibly allege the ATF's inspection was designed to punish, especially in light of its decision to not revoke Morehouse's license. See e.g., United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001) (timing of prosecution insufficient to give rise to presumption of vindictiveness).

Nor can Plaintiffs assert a claim of selective prosecution. To plead a claim of selective prosecution, Plaintiffs must show "others similarly situated have not been prosecuted for similar conduct" and the ATF's actions were "based on an impermissible motive such as race, religion, or the exercise of constitutional rights." United States v. Parham, 16 F.3d 844, 846 (8th Cir. 1994). Plaintiffs do not allege similarly situated FFLs were not prosecuted; on the contrary, Plaintiffs allege thousands of "similarly situated FFLS across the country . . . will face ATF compliance inspections, warning letters warning conferences, and revocations under the legally flawed 2022 AAP." Doc. 1 ¶ 216. Because Plaintiffs do not allege similarly situated FFLs will not be prosecuted, it does not plausibly plead a claim of selective prosecution.

Lastly, Plaintiffs claim the ATF's inspection violated their right to access the courts. "[G]overnment action designed to keep a citizen from initiating legal remedies sometimes infringes upon the First Amendment right to petition the courts." In re Workers' Comp. Refund, 46 F.3d 813, 822 (8th Cir. 1995). But this claim fails because there is an insufficient connection between Morehouse's lawsuits and the ATF inspection. The ATF's inspection occurred after Morehouse's first lawsuit, but there are no other facts alleging a connection. Nor was Morehouse deterred from accessing the courts as evidenced by their second lawsuit. So, Morehouse has not plausibly alleged the ATF's inspection was "designed" to "punish" Morehouse for exercising its right to petition the courts "or to intimidate or chill [its] exercise of that right in the future." See Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1428 (8th Cir. 1986).

### III. CONCLUSION

Plaintiffs have standing, and the ATF's motion dismiss for lack of jurisdiction is **DENIED**. But the AAP is not a final agency action, so Plaintiffs cannot bring an APA claim. And Plaintiffs do not adequately allege behavior protected by the Second Amendment nor how the AAP burdens any alleged protected behavior. Lastly, Plaintiffs do not allege a sufficient connection between their lawsuits and the ATF's inspection of Morehouse to plausibly plead claims under the First and Fifth Amendments for vindictive prosecution, selective prosecutions, and access to the courts. The ATF's motion to dismiss for failure to state a claim (Doc. 55) is **GRANTED**, and Plaintiffs' complaint is **DISMISSED** without prejudice.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 8th day October, 2024

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court

15